Opinion filed March 27, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00136-CV

_____

## BAILEY COWAN HECKAMAN PLLC, Appellant

## V.

## CLARK, LOVE & HUTSON, GP, Appellee

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. CV34950**

## O P I N I O N

This case involves a longstanding and bitter feud between two law firms over splitting the attorneys' fees generated from large-scale litigation against SmithKline Beecham Corporation d/b/a GlaxoSmithKline (SmithKline). Appellee, Clark, Love & Hutson, GP (Clark), alleged that Appellant, Bailey Cowan Heckaman PLLC (Bailey), failed to honor its obligation to share attorneys' fees with Clark under a 2007 letter agreement. Bailey, on the other hand, maintained that Clark

withdrew from the agreement in 2010, and that it had no obligation to share fees that were earned after the purported withdrawal.

In this interlocutory appeal, Bailey complains that the trial court abused its discretion when it denied Bailey's motion to dismiss Clark's breach-of-contract claim under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2020 & Supp. 2024).[1] Bailey also complains that the trial court abused its discretion when it found that Bailey had filed the motion for the sole purpose of delay, awarded $100,000 in attorneys' fees to Clark, and declined to award Bailey attorneys' fees, court costs, and sanctions.

We modify the trial court's order to vacate the award of attorneys' fees to Clark and affirm the order as modified.

*Factual and Procedural Background*

SmithKline is the manufacturer of Paroxetine (Paxil), an antidepressant medication. After SmithKline began selling Paxil in 1992, several reports of Paxil's adverse side effects were published, and numerous lawsuits were filed against SmithKline alleging personal injury and wrongful death arising out of the use of Paxil.

On April 4, 2007, Bailey and Clark entered into a letter agreement, which contemplated that the firms would "work together on [a] Paxil ad campaign and litigation." Pursuant to the terms of the agreement, Bailey was responsible for paying for the costs that were associated with advertising Bailey and Clark's Paxil-related legal services to the public. The firms would then share in the responsibilities and costs of all litigation arising out of the agreement on a 50/50 basis.

---

[1]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12, 2019 Tex. Gen. Laws 684, 684–87 (codified at CIV. PRAC. & REM. § 27.001, .003, .005–.007, .0075, .009–.010). We note that the amendments do not affect our analysis in this case.

After entering into the agreement, the parties proceeded with litigation of several Paxil cases, resulting in a settlement in 2010 that was administered by the 212th District Court in Galveston County.

It appears to be undisputed that, as a part of the 2010 settlement, SmithKline asked both firms to agree that they would not be involved in any Paxil cases going forward. This request was problematic because Texas attorneys are prohibited from "offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a suit or controversy." *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 5.06(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

On April 28, 2010, Clayton Clark, a principal of the Clark firm, sent an e-mail to three representatives of the Bailey firm. Among other things, the e-mail indicated that Clark had communicated with counsel for SmithKline that, following the settlement, both the Clark and Bailey firms were "done on Paxil forever."

At this point, the parties' accounts of the facts begin to differ. Bailey maintains that it promptly responded to the e-mail, informing the Clark firm that it would not enter into such an agreement.[2] Thus, according to Bailey, because Clark (and only Clark) committed to refrain from Paxil litigation, the parties thereafter "treated the 2007 Agreement as terminated and no longer in force or effect."

Clark, on the other hand, maintained that, despite its representation to SmithKline that it would no longer represent Paxil clients, both parties continued to operate under the 2007 agreement following the 2010 settlement. In support of this allegation, Clark points out that it frequently consulted with Bailey about ongoing litigation, and that it was "always available to assist" when Bailey called to request

---

[2]Although representatives of Bailey have testified that Bailey put its objection to the agreement in writing, it does not point to any such communication in its briefing.

consultation and advice. Additionally, in September 2011, the Clark firm transferred $500,000 to the Bailey firm for advertising, which it was obligated to provide under the terms of the 2007 agreement.

There is some evidence that the parties attempted to negotiate a new agreement following the 2010 settlement, although the negotiations were not successful. In April 2011, Clayton Clark wrote Ken Bailey, a principal of the Bailey firm, and submitted a proposal for "Paxil cases which were not included in the first round Paxil settlement." Bailey responded with a counterproposal on the same day, indicating that "[w]e have much to do together in the future." However, the parties never reached a new agreement.

The parties agree that, following the 2010 settlement, Bailey settled a number of additional cases, but that it did not share its fees from those cases with Clark. Likewise, they agree that Clark settled a number of cases in or around 2012, and that Clark has thus far failed to share the fees from those cases with Bailey. Bailey argues that, because Clark failed to share any fees in connection with those settlements, Clark "clearly believe[ed] that the 2007 Agreement had terminated." Clark, on the other hand, indicates that it was prepared to share the fees from the 2012 cases, and that Bailey's share of the fees associated with those cases have been set aside in Clark's trust account.

The cases that were settled by Bailey were resolved under two master settlement agreements in 2017. Pursuant to the terms of the settlement agreements, two judicial proceedings were filed in a Hardin County District Court for the purpose of creating and administering a settlement trust fund. The record indicates that none of the 605 litigants who participated in the 2017 settlement had consented in writing to the terms of the fee-sharing agreement set out in the 2007 letter agreement.

4

The lawsuit that is the subject of this appeal was filed by Clark in April 2018. In its initial pleading, Clark alleged that it was "entitled to one-half of attorneys' fees" from the 2017 settlements and sought "an accounting of all past and pending settlements from the Paxil litigation in which the Bailey Law Firm has served as lead counsel or as a primary counsel." Thereafter, Clark filed four amended petitions, each of which sought a declaratory judgment relating to Clark's rights under the 2007 letter agreement.

On February 3, 2023, the trial court set the case for a bench trial that was to take place on April 5, 2023. Ten days later, Clark filed a fifth amended petition, asserting—for the first time—a cause of action for breach of contract. On February 22, 2023, Bailey filed an amended answer to Clark's petition that included a demand for a jury trial. Bailey tendered a jury fee the next day. On February 27, Clark filed a sixth amended petition, which again asserted a cause of action for breach of contract. Thereafter, on March 28, 2023, the trial court sent a letter to the parties setting the case for a jury trial on July 10, 2023.

Bailey filed the motion to dismiss that is the subject of its appeal on April 3, 2023. Following a hearing, the trial court denied the motion and awarded attorneys' fees to Clark in the amount of $100,000. Bailey now appeals from the order denying its TCPA motion, the award of attorneys' fees to Clark, and the denial of attorneys' fees to Bailey.[3]

### Bailey's TCPA Motion

In its first issue, Bailey argues that the trial court erred when it failed to dismiss the Clark firm's breach-of-contract claim pursuant to the TCPA.

---

[3]An interlocutory appeal may be taken from the denial of a motion to dismiss under the TCPA. *See* CIV. PRAC. & REM. § 51.014(12).

The legislature enacted the TCPA "to safeguard 'the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law'" while, at the same time, protecting a person's right "to file meritorious lawsuits for demonstrable injury." *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 835, 847 (Tex. 2021) (quoting CIV. PRAC. & REM. § 27.002).

To effectuate this dual purpose, the TCPA employs a three-step process to determine whether a lawsuit or claim is subject to dismissal. *Montelongo v. Abrea*, 622 S.W.3d 290, 295–96 (Tex. 2021). First, the movant must demonstrate by a preponderance of the evidence that a legal action is based on, relates to, or is in response to, the movant's exercise of one of three rights protected by the statute: (1) the right of free speech, (2) the right to petition, or (3) the right of association. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *see also Montelongo*, 622 S.W.3d at 296. Next, if the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." CIV. PRAC. & REM. § 27.005(c); *Montelongo*, 622 S.W.3d at 296. Finally, even if the nonmovant meets that burden, the trial court is required to dismiss the legal action if the movant establishes by a preponderance of the evidence each essential element of a valid defense to the challenged claim. CIV. PRAC. & REM. § 27.005(d). "A party can avoid the TCPA's burden-shifting requirements by showing that one of the exemptions applies." *Temple v. Cortez Law Firm, PLLC*, 657 S.W.3d 337, 343 (Tex. App.—Dallas 2022, no pet.) (citing *Clean Energy v. Trillium Transp. Fuels, LLC*, No. 05-18-01228-CV, 2019 WL 3212145, at *3 (Tex App.—Dallas July 9, 2019, no pet.) (mem. op.)).

In its motion to dismiss, Bailey maintained that Clark's breach-of-contract claim is based on and relates to Bailey's exercise of (1) the right to petition and (2) the right to free speech.

Under the TCPA, the right to petition includes, among other things, "a communication in or pertaining to . . . a judicial proceeding." *See* CIV. PRAC. & REM. § 27.001(4)(A)(i). Likewise, the "right of free speech" is defined as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). In turn, a "[c]ommunication" is defined as "the making or submitting of a statement or document in any form or medium, including . . . written . . . or electronic." *Id.* § 27.001(1). Bailey's motion to dismiss argued that both the 2007 letter agreement, as well as the settlement agreements arising out of the 2017 Paxil settlement qualify as "communications" that were made in connection with the Paxil litigation (i.e., a "judicial proceeding").

*The Personal Injury Exemption*

Clark argues that a TCPA action is not available to Bailey because of the personal injury exemption in the TCPA. That exemption provides that the TCPA does not apply to "a legal action seeking recovery for bodily injury, wrongful death, or survival or to statements made regarding that legal action." CIV. PRAC. & REM. § 27.010(a)(3).

Clark bears the burden of proving that the exemption is applicable. *See ETX Successor Tyler v. Pridgeon*, 570 S.W.3d 392, 397 (Tex. App.—Tyler 2019, no pet.); *Kirkstall Rd. Enters., Inc. v. Jones*, 523 S.W.3d 251, 253 (Tex. App.—Dallas 2017, no pet.) ("The non-movant bears the burden of proving a statutory exemption.").

The personal injury exemption applies in two interrelated circumstances. First, it applies to "a legal action seeking recovery for bodily injury, wrongful death, or survival." CIV. PRAC. & REM. § 27.010(a)(3). Clark does not argue that its

7

lawsuit, which arises out of economic losses in connection with an agreement to share fees, qualifies as a personal injury action. As such, the question that is raised by Clark's assertion of the exemption is whether the second circumstance applies: whether the two agreements at issue constitute "statements" that are directed toward a legal action that is covered by the exemption.

A. *The Meaning of "Legal Action"*

Clark maintains that the various cases comprising the Paxil litigation are actions "seeking recovery for bodily injury, wrongful death, or survival," and that the 2007 letter agreement as well as the 2017 settlement are "statements" that were made in connection with those actions.[4] In response, Bailey argues that the only "legal action" that is relevant under the terms of the exemption is the legal action in which the TCPA defense is asserted. *See* CIV. PRAC. & REM. § 27.010(a)(3).

In support its argument, Bailey points to *Page v. Bakewell*, No. 05-21-00905-CV, 2022 WL 4007879 (Tex. App.—Dallas Sept. 2, 2022, no pet.) (mem. op.). In *Page*, the plaintiff brought a lawsuit for defamation, assault, and negligence per se, alleging that the defendant had assaulted him and that, after he filed criminal charges relating to the assault, the defendant retaliated by filing a false affidavit against the plaintiff in a family court matter. 2022 WL 4007879, at *1. The plaintiff appealed after his TCPA motion was denied by operation of law. *Id.*

On appeal, the court considered the question of whether the claim for defamation was subject to the personal injury exemption, concluding that the exemption applies only to statements relating to a "legal action," and not to statements regarding the underlying conduct of the plaintiff. *Id.* at *2–3; *see* CIV. PRAC. & REM. § 27.010(a)(3).

---

[4]The documents that are affiliated with the 2017 settlement are not in the record, but both parties agree that they were settlements of product liability lawsuits that included allegations of bodily injury and death.

In *Page*, there was no allegation that the defendant had made a statement regarding a bodily injury lawsuit, including the lawsuit in which the TCPA action was filed. By contrast, Clark maintains that Bailey has made a "statement" regarding a series of specific bodily injury actions, and therefore the statement at issue was not directed at mere "underlying conduct." As such, we are unpersuaded that *Page* advances Bailey's argument on this issue.

Furthermore, the argument that Bailey advances appears to have been expressly rejected by the Dallas Court of Appeals in *Temple*. 657 S.W.3d 337. In *Temple*, a law firm sued a medical provider that was treating one of its clients after the medical provider allegedly defamed the law firm by accusing it of failing to disburse settlement funds in connection with the client's personal injury lawsuit. *Id.* at 340. After the medical provider asserted a TCPA defense, the law firm argued that the personal injury exemption applied because the provider's alleged statements involved a "legal action" that sought a recovery for "bodily injury." CIV. PRAC. & REM. § 27.010(a)(3). The medical provider responded by making the same argument that is asserted by Bailey in this case. That is, the provider maintained that the TCPA exemption did not apply because, even though the provider had allegedly made a statement regarding a separate legal action for bodily injury, "the Firm's [own] legal action does not seek recovery for bodily injury." 657 S.W.3d at 346.

The Dallas Court of Appeals rejected this argument, holding that the exemption's plain language "refers only to '*a* legal action' seeking recovery for [bodily injury] and to statements made regarding 'that legal action." *Id.* at 347 (quoting CIV. PRAC. & REM. § 27.010(a)(3)). Accordingly, "[S]ection 27.010(a)(3)'s plain terms can be understood as stating that the TCPA does not apply to *any* legal action seeking recovery for bodily injury, wrongful death or survival or to statements made regarding that legal action." *Id.*

We agree with the Dallas Court of Appeals that statements about *any* legal action seeking recovery for bodily injury, wrongful death, or survival are subject to the personal injury exemption, regardless of whether the "legal action" is the same matter in which the TCPA defense is asserted or a wholly different matter.

The Tyler Court of Appeals reached a similar decision in *Pridgeon*. In that case, an individual who had been injured in an automobile accident filed a declaratory judgment action against a hospital that had asserted a lien in connection with its treatment of his injuries. 570 S.W.3d at 396. In response to the declaratory judgment action, the hospital filed a motion to dismiss under the TCPA, claiming that the lien was a communication for purposes of its right to free speech and right to petition. *Id.* at 396–97. Among other things, the injured motorist opposed the motion by claiming that the lien also qualified as a "statement" regarding his personal lawsuit against the alleged tortfeasor, and that the lien was therefore subject to the personal injury exemption. *Id.* at 397–98; *see* Civ. Prac. & Rem. § 27.010(a)(3). The Tyler Court of Appeals agreed with the injured motorist that the lien in question was a "statement regarding [the] bodily injury action." *Pridgeon*, 570 S.W.3d at 398. Additionally, it rejected the hospital's argument that "the lien cannot be a statement regarding [the] bodily injury action because the lawsuit was filed after the lien was recorded." *Id.* The court reasoned that, "[b]y its own terms, the lien was to attach to judgments or settlements occurring any time after the lien was recorded." *Id.* As such, it was also necessarily a statement about the injured motorist's anticipated litigation. *Id.*

It does not appear that the hospital in *Pridgeon* argued, as Bailey does, that the personal injury exemption applies only to the action in which the TCPA motion is filed. Nevertheless, the Tyler Court of Appeals construction of the exemption is antithetical to the construction suggested by Bailey.

B. *The Meaning of "Statements"*

Bailey also argues that the personal injury exemption is inapplicable because the documents at issue are not "statements" for purposes of the exemption. *See* CIV. PRAC. & REM. § 27.010(a)(3). Bailey maintains that the TCPA's definition of "communication" distinguishes between two forms of communication: "statement[s]" and "document[s]." *See id.* § 27.001(1) (defining communication as "the making or submitting of a *statement or document* in any form") (emphasis added). Bailey then asserts that the word "statement," as used throughout the TCPA, refers only to *oral* communications, and that the 2007 letter agreement and the 2017 settlement agreement are therefore "communications" (i.e., "document[s]") for purposes of its right to free speech and the right to petition, but not "statements" for purposes of the personal injury exemption.

"We review questions of statutory interpretation de novo, as they are questions of law." *Butler v. City of Big Spring*, 652 S.W.3d 149, 152 (Tex. App.—Eastland 2022, pet. denied). When interpreting a statute, we must "ascertain and give effect to the Legislature's intent." *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024) (quoting *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021)); *Butler*, 652 S.W.3d at 152. "We look for that intent first and foremost in the plain language of the constitutional or statutory provision." *Odyssey*, 624 S.W.3d at 540; *see also Butler*, 652 S.W.3d at 152. "If the statute's plain language is unambiguous, we interpret its plain meaning, presuming that the Legislature intended for each of the statute's words to have a purpose." *Johnson*, 691 S.W.3d at 847 (quoting *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019)); *see also Butler*, 652 S.W.3d at 152 ("Our objective is to 'ascertain[] and giv[e] effect to the legislature's intent as expressed by the plain and common meaning of the statute's words.'" (quoting *Wichita Cnty. v. Bonnin*,

11

268 S.W.3d 811, 817 (Tex. App.—Fort Worth 2008, pet. denied))). Statutory terms that are not defined by the legislature "usually bear their common, ordinary meaning." *Johnson*, 691 S.W.3d at 847.

Bailey's briefing does not include a definition of "statement," nor does Bailey cite any case law or other authority supporting its assertion that the term "statement"—in the context of the TCPA or otherwise—should be limited to the spoken word. An examination of the use of the same term in other contexts, however, quickly dispels the notion that the plain meaning of the word "statement" is limited to oral communications.

The hearsay rule, for example, indicates that a statement is "a person's *oral or written* verbal expression." TEX. R. EVID. 801(a) (emphasis added). Likewise, our rules of civil procedure permit the discovery of "*Statements of Persons with Knowledge of Relevant Facts*" or "witness statement[s]." TEX. R. CIV. P. 192.3(h). Under the rules of procedure, a "witness statement" is defined as "a *written statement* signed or otherwise adopted or approved in writing by the person making it" or a "recording of a witness's oral statement, or any substantially verbatim transcription of such a recording." *Id.* (emphasis added).

Similarly, the Administrative Procedure and Practice Act (APA) contemplates that agencies may sometimes make "statement[s]," and then attempts to distinguish between the circumstances under which such "statement[s]" are also "[r]ule[s]". *See* GOV'T § 2001.003(6) (West 2016). In that context, orders, letters and other documents that are issued by a state agency are routinely treated as "statements." *See, e.g.*, *Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 459 (Tex. 2024) (Orders issued by Public Utility Commission were "rules"—and thereby also "statements"—under the definition set out in the APA.); *Teladoc, Inc. v. Tex. Med. Bd.*, 453 S.W.3d 606, 614 (Tex. App.—Austin 2014, pet. denied) (The

Texas Medical Board "does not dispute that its letter is a 'state agency statement,' as required by [the APA], and it plainly is.").

The law of libel, which involves the written publication of defamatory facts, also commonly relies on the word "statement" to refer to the written text that is alleged to be defamatory. *See, e.g.*, *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623–24 (Tex. 2018) ("Slander is a defamatory statement expressed orally. By contrast, libel is a defamatory *statement* expressed in written or other graphic form.") (emphasis added) (citations omitted).

Finally, we note that Merriam-Webster defines "statement" as "the act or process of stating or presenting *orally or on paper*." *Statement*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1219 (11th ed. 2004) (emphasis added). This definition likewise does not lend credence to Bailey's argument that the word statement, as it is commonly understood, is somehow limited to spoken communication.

Bailey also argues that the meaning of the term "statement" should be limited to spoken communication based on principles of statutory construction. Bailey begins this argument by pointing out that a statute should be construed in such a way that each word has its own purpose. *See, e.g.*, *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 442 (Tex. 2011) (The "Legislature included each word in the statute for a purpose." (quoting *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008))). Bailey then maintains that, by using the phrase "statement or document" to define the term "communication," the legislature intended to make a distinction between written and oral communication. Bailey appears to reason that, if the word "statement" is assigned a meaning that includes both oral and written expressions, then the word "document"—which is limited to written expressions—adds no additional meaning to the definition of "communication." Thus, Bailey seems to

argue that, when the legislature used the word "statement," as opposed to the word "communication" in the personal injury exemption, it must have thereby intended to exclude communications that are set out in "documents."

When construing a statute, we generally presume "that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC*, 340 S.W.3d at 439; *see also City of Stephenville v. Belew*, 692 S.W.3d 347, 362 (Tex. App.—Eastland 2024, pet. denied) ("[W]e read statutes contextually to give effect to every word, clause, and sentence because every word and phrase is presumed to have been used intentionally, with a meaning and a purpose."). However, even if we presume that the legislature intended for the words "statement" and "document" to carry different meanings within the context of the TCPA, we are unaware of any authority which requires us to presume, as Bailey suggests, that the meaning of such terms must also fall into mutually exclusive categories. To the contrary, we anticipate that these words, which appear side-by-side as a part of the definition of "communication," will carry similar, and likely overlapping, meanings. *See Belew*, 692 S.W.3d at 365 (Under the principle of *noscitur a sociis* [the associated-words canon], where "several . . . words . . . are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012))).

A "document" is commonly understood as "a writing conveying information." *Document*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003); *see also Document*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining document as "[s]omething tangible on which words, symbols, or marks are recorded" including "any information stored on a computer, electronic storage device, or any other

14

medium"). "Documents" therefore can include "papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and data compilations." *See* TEX. R. Civ. P. 192.3(b).

In part, the words "document" and "statement" can be distinguished by the unique purposes that they serve. A "statement" reflects the use of language or other symbols to convey a message, whereas a "document" is a vehicle by which a statement might be conveyed. However, even then, the two concepts do not fully overlap. The parties agree that some statements (including oral statements) are not contained in documents. Furthermore, as Clark argues, some documents do not contain statements. Not all photographs can be construed as "statements." Likewise, certain forms of data (such as accounting or demographic data) are not "statements" in any common or pragmatic sense.

The phrase "statement or document" in the TCPA's definition of "communication" is a phrase that is similar to "*[t]he Synonym-Introducing or.*" *See* Scalia & Garner, *Reading Law* 122. In such sentences, the word "or," rather than suggesting alternative categories, is merely intended to introduce a second word that is the "definitional equivalent" of the first. *Id.* (pointing to the phrase "exemplary or punitive damages" as an example of the synonym-introducing *or*). In the case of the synonym-introducing *or*, the second item in the sentence is nonrestrictive. *Id.* That is, the sentence can properly be completed without it. *Id.*

In this instance, "statement" and "document" are not definitional equivalents, nor are they fully synonymous. Nevertheless, we believe that the word "or" is being used in a similar vein. That is, the phrase "statement or document" is not intended to, and does not place, a restriction on the meaning of "statement." Instead, it operates as an elaboration, which broadens the scope of expressions that are included within the meaning of "communication."

15

A construction that treats the use of the phrase "statement or document" as an elaboration (as opposed to an attempt to create subcategories or restrictions in meaning) is consistent with the context in which the phrase appears. The definition indicates that "communication" includes "the *making or submitting* of a statement or document *in any form*." CIV. PRAC. & REM. § 27.001(1) (emphasis added). Like the phrase "statement or document," the phrase "making or submitting" contains a synonym-introducing *or*, or something closely akin to it. *See id.*; Scalia & Garner, *Reading Law* 122. Likewise, the phrase "in any form" attempts to cast a broad net, indicating that the terms "statement" and "document" are to be construed in an unrestrictive manner.

Our construction is also consistent with the common observation that the TCPA, including its definition of "communication," is broad in scope. *See Yu v. Koo*, 633 S.W.3d 712, 721 (Tex. App.—El Paso 2021, no pet.) (A "communication" under the TCPA is "very broad."); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("The TCPA casts a wide net" such that, under right of free speech "[a]lmost every imaginable form of communication, in any medium, is covered.").

C. *Conclusion*

We conclude that the 2007 letter agreement and the 2017 settlement are both "statements" concerning "a legal action seeking recovery for bodily injury, wrongful death, or survival," and that Bailey's request for relief under the TCPA therefore falls within the TCPA's personal injury exemption. CIV. PRAC. & REM. § 27.010(a)(3). Accordingly, we overrule Bailey's first issue without the need of

undertaking the three-step analysis that is ordinarily required in a TCPA appeal.[5] *See Montelongo*, 622 S.W.3d at 295–96; *Temple*, 657 S.W.3d at 343. Likewise, because Bailey is not a prevailing party on its motion, we overrule Bailey's fourth issue that the trial court erred by refusing to award it attorneys' fees, court costs, other expenses, and sanctions. *See* CIV. PRAC. & REM. § 27.009(a)(1) ("[i]f the court orders dismissal of a legal action under [the TCPA], the court shall award to the moving party court costs, reasonable attorney's fees, and other expenses.").

*The Award of Attorneys' Fees to Clark*

The trial court found that Bailey's TCPA motion was "without merit and solely intended for delay," and—on that basis—entered an order requiring Bailey to pay $100,000 to Clark "in reasonable attorneys' fees and costs of court." In its second and third issues, Bailey asserts that the trial court's award of attorneys' fees was an abuse of discretion.

Under the TCPA, a trial court can award "costs and reasonable attorney's fees to the responding party" if it finds that the motion to dismiss "is frivolous or solely intended to delay." *Id.* § 27.009(b). In this case, the trial court found that the motion was "*without merit* and solely intended for delay." (emphasis added). The trial court's finding that Bailey's TCPA motion was "without merit" is not a finding that the motion was frivolous. "A motion to dismiss under the TCPA is frivolous if it has no basis in law or fact and lacks a legal basis or legal merit." *Clayton Mountain Dev., LLC v. Ruff*, No. 11-20-00114-CV, 2021 WL 3413644, at *7 (Tex. App.—

---

[5]Clark has filed a Motion to Strike Materials Outside the Record, asking us to disregard certain materials in Bailey's reply brief that reference the 2017 settlements. In response, Bailey has filed a Motion to Take Judicial Notice of Certified Court Orders. The court orders at issue in the motion were rendered in connection with the 2017 settlements that are the subject of Bailey's contentions. Because each of the parties have indicated that the settlements at issue involve claims for personal injury and death, it is not necessary for us to determine whether the settlement documents themselves should be in the record for purposes of applying the personal injury exemption. Accordingly, each of the parties' motions are dismissed as moot.

Eastland Aug. 5, 2021, no pet.) (mem. op.) (citing *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 243 (Tex. App.—Eastland 2019, no pet.)). The trial court's statement that the motion is "without merit" merely indicates that the motion lacks adequate factual or legal support. Furthermore, neither party argues that the trial court's award of attorneys' fees was based on a finding that Bailey's motion was frivolous. As such, the only basis for the trial court's award of attorneys' fees was its finding that Bailey had filed its motion for the sole purpose of delaying the proceedings.

We review the trial court's decision to award attorneys' fees under the TCPA for an abuse of discretion. *Calibur*, 591 S.W.3d at 242; *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied).

Clark argues that Bailey filed the motion to dismiss for the purpose of delaying the July 10, 2023 trial. In support of this argument, Clark points out that Bailey could have filed a TCPA motion in connection with Clark's claims as early as 2018, since Clark's pleadings had always arisen out of the alleged "communication" in the 2007 letter agreement. Clark maintains that, because Bailey did not file its TCPA motion until after the case had been set for trial, Bailey must therefore have filed the motion with an intent to delay the proceedings by "capitaliz[ing] on the TCPA stay." *See* CIV. PRAC. & REM. 51.014(b) (An interlocutory appeal "stays the commencement of a trial in the trial court pending resolution of the appeal.").

The tactic of filing a TCPA motion to delay the trial of a plaintiff's case is not uncommon. Even pro se defendants have become adept at deploying TCPA motions as a means of delaying trial settings and the corresponding risk that a judgment will be rendered against them. *See, e.g.*, *Ruff v. Ruff*, No. 11-23-00019-CV, 2024 WL 4628598, at *6 (Tex. App.—Eastland Oct. 31, 2024, no pet. h.) (mem. op.)

18

(Frivolous TCPA motion was consistent with pro se defendant's history "of repeatedly deploying procedural mechanisms to intentionally delay the progress of the litigation."). Based on the evidence in the record, the trial court could have reasonably determined that Bailey intended to avoid an otherwise imminent trial by submitting a TCPA motion.

However, a finding that Bailey intended delay is not sufficient. The delay that is imposed after a TCPA motion is denied is not an unfortunate side effect, but a feature of any appeal arising out of the denial of a TCPA motion, as well as several other forms of interlocutory appeal. *See* CIV. PRAC. & REM. § 51.014(b). In that sense, virtually every defendant who files a TCPA motion *intends* to delay the litigation, at least in the event the motion is denied.

Rather, attorneys' fees are available against a TCPA movant only when delay is the *sole* motivation for filing the motion. *Id.* § 27.009(b); *see also Clayton Mountain*, 2021 WL 3413644, at *8 ("Although [nonmovant] argues that [movants] filed the motion to delay the proceedings against [movant], the issue before us is whether [movants'] *intent* when the motion was filed was *solely* to delay the proceedings."); *Sullivan*, 551 S.W.3d at 857–58 ("While . . . circumstance[s] might support a finding that delay was *a* factor in [the] decision to file the motion, they do not support a reasonable finding that delay was the *only* factor.").

The briefing of the parties is replete with attempts to describe and/or refute the existence of additional motivations on the part of Bailey. Clark, for example, argues that there is no legal basis for Bailey's argument that it could not have filed a TCPA motion in connection with its claims for declaratory judgment. *See Pridgeon*, 570 S.W.3d at 399 (applying TCPA to declaratory judgment action). Bailey, by contrast, emphasizes that its motion was filed in a timely manner. *See, e.g.*, *Grand Parkline, LLC v. Mama Fu's Lakeline, LLC*, No. 03-19-00683-CV, 2020

19

WL 7050375, at *6 (Tex. App.—Austin Dec. 2, 2020, no pet.) (mem. op.) ("[W]hen appellants filed their TCPA motion, the motion was filed within sixty days of the filing of [appellee's] . . . amended (live) petition, making it an appropriate and timely vehicle to challenge the newly pleaded claims."). While these arguments are relevant, the central question can be more directly stated as follows: when Bailey filed its TCPA motion, was Bailey motivated at least in part by the intention that is stated in the motion—that is, to secure a dismissal of Clark's claim for breach of contract?

By all appearances, Bailey has engaged in a sincere, if unsuccessful, attempt to secure a dismissal of Clark's claim for breach of contract. Bailey filed a timely motion that provided extensive support, both in the record and in the caselaw, for its arguments in connection with the three-step TCPA analysis. *See Montelongo*, 622 S.W.3d at 295–96. Thereafter, Bailey requested and attended a hearing in which counsel for Bailey offered protracted argument as to why the motion should be granted. There was no indication in the words or actions of Bailey or its counsel that the TCPA motion was a mere pro forma gesture. To the contrary, Bailey's advocacy in support of the motion indicates that a dismissal of Clark's breach-of-contract claim was the outcome that Bailey preferred. Likewise, Clark does not allege that the motion was frivolous.

Clark argues that Bailey "knew [the TCPA motion] was doomed to fail." In support of this argument, Clark relies on a change in the law that was signaled by the Texas Supreme Court's decision in *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127 (Tex. 2019). In that case, the supreme court held that, insofar as the "exercise of the right of free speech" is concerned, the TCPA does not apply to private business communications that have no "relevance to a wider audience of potential buyers or sellers" because such communications are not

20

a "matter of public concern," as required by the statute. *Id.* at 134–36; *see* CIV. PRAC. & REM. § 27.001(3). Clark maintains that, prior to *Creative Oil*, Bailey could have explained a motion "as having a purpose other than delay" because it was unclear at the time as to whether the right to free speech applied to private communications that also concerned "a good, product or service in the marketplace." *See, e.g.*, *Grand Parkline*, 2020 WL 7050375, at *4. Clark reasons that, after *Creative Oil*, Bailey knew that the TCPA did not apply to Clark's claims because the agreement between the parties was purely a matter of a private contractual arrangement.

We find this argument to be unpersuasive. Bailey's request for relief under the TCPA was not merely based on the right to free speech that was at issue in *Creative Oil*. 591 S.W.3d at 132. Its request was also based on the right to petition in connection with a judicial proceeding, a right that does not include the "matter of public concern" component that is associated with the right to free speech. *See* CIV. PRAC. & REM. §27.001(4)(A)(i); *Guardianship of Workman*, 670 S.W.3d 414, 423 (Tex. App.—Eastland 2023, pet. denied) (The "right to petition" under the TCPA does not include a public concern requirement.).

As such, even if Bailey was convinced by *Creative Oil* that its communications were not based on the right to free speech—as Clark argues—it could have still believed that the TCPA motion would prevail in connection with the right to petition.

Furthermore, Bailey also believed (and argued) that the 2007 agreement and the 2017 settlement were connected to "a matter of public concern" and therefore outside of the purview of *Creative Oil*. Specifically, Bailey argued that the agreement was relevant to buyers and sellers of pharmaceuticals, as well as buyers and sellers of legal services, including those services that would result from the

21

advertising that was contemplated by the 2007 agreement. Again, however, we note that the issue is not whether Bailey advanced a frivolous argument (an issue that was never raised by Clark), but whether, in filing its TCPA motion, Bailey was motivated by the possibility that its motion would be granted either in the trial court or later on appeal. The close relationship between the communications at issue and public health and safety, as well as the public interest in maintaining the integrity of the legal profession, is sufficient to justify a good faith belief that one or more courts might distinguish the "communications" at issue in this case from those in *Creative Oil*. *See, e.g.*, TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04 (regulating the contents of fee agreements between attorneys).

Clark also suggests that, even if Bailey believed it could succeed under Step One of the TCPA analysis, Bailey was aware that Clark could readily establish a prima facie case in response to Step Two. However, Bailey did not merely rely on Step Two (in which Clark was obligated to meet its prima facie burden) in order to prevail on the motion. Bailey also offered evidence in support of an affirmative defense in connection with Step Three. *See* CIV. PRAC. & REM. § 27.005(d) ("Notwithstanding . . . Subsection (c) [relating to the nonmovant's prima facie burden under Step Two], the court shall dismiss a legal action . . . if the moving party establishes by a preponderance of the evidence each essential element of a valid defense."). Specifically, Bailey argued that the contract at issue was unenforceable as a matter of law because it required fee sharing in situations where the clients have not consented. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(f)(2) ("A division or arrangement for division of a fee between lawyers . . . may be made only if . . . the client consents in writing to the terms of the arrangement."). Among other things, this argument is supported by the supreme court's opinion in *Johnson v. Brewer & Pritchard, P.C.*, which stated, in simple terms, that "[a] fee sharing

22

agreement between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the sharing arrangement." 73 S.W.3d 193, 205 (Tex. 2002). We have not reached the merits of the parties' dispute over the enforceability of the contract in this appeal. However, for purposes of this issue, we recognize that the supreme court's language in *Johnson* is alone more than sufficient to support a good-faith belief on the part of Bailey that it could prevail on Step Three.[6]

In short, even if it is assumed that, when Bailey filed its TCPA motion, it was motivated in part by the benefits that it would gain from the delay of the trial arising out of a stay from an interlocutory appeal, the record also reflects that Bailey was motivated by its stated purpose of securing a dismissal of Clark's breach-of-contract action, either in the trial court or if we reversed the trial court's decision on appeal. As such, the trial court abused its discretion when it found that Bailey filed its TCPA motion with the *sole* intention of delaying trial.

It is, admittedly, difficult to imagine a situation where a TCPA motion can be both (a) not frivolous while also (b) intended *solely* for the purpose of delay. *See* CIV. PRAC. & REM. § 27.009(b). However, it is not impossible, and we do not believe that the consideration of a movant's stated purpose in filing a motion (as we have done here) runs afoul of our rules of construction. *See, e.g.*, *Belew*, 692 S.W.3d at 362 (We "give effect to every word, clause, and sentence because every word and phrase is presumed to have been used intentionally."). There are scenarios in which a TCPA motion that is not frivolous can also be intended for delay. For example, a party might file an untimely motion that is not frivolous on its merits merely to create

---

[6]Clark maintains that the holding in *Johnson* is dicta. If true, this argument would certainly weaken Bailey's position. However, it is still strong persuasive authority in support of the unenforceability of fee sharing arrangements that are not properly approved by the client(s).

a brief delay in the litigation while the trial court addresses the motion. Likewise, a party that wishes to proceed with litigation in the long-term might file and then later withdraw a valid TCPA motion for the sole motivation of creating a temporary pause in the proceedings. Nevertheless, for the reasons stated above, it is clear in this instance that Bailey's TCPA motion was not *solely* intended for delay.

We sustain Bailey's second and third issues.

*This Court's Ruling*

We modify the trial court's order of June 12, 2023 by vacating the trial court's award of attorneys' fees to Clark. As modified, we affirm the order of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

March 27, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.